IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TAKEDA PHARMACEUTICAL COMPANY, LTD., and TAP PHARMACEUTICAL PRODUCTS INC.,<br><br>      Plaintiffs and<br>      Counterclaim-Defendants,<br><br>    v.<br><br>TEVA PHARMACEUTICALS USA, INC., and TEVA PHARMACEUTICAL INDUSTRIES LTD.,<br><br>      Defendants and<br>      Counterclaim-Plaintiffs. | C.A. No. 06-33-SLR |

**NOTICE OF DEPOSITION OF TAKEDA PHARMACEUTICAL COMPANY LTD. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)**

Please take notice that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendants and Counterclaim-Plaintiffs Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries Ltd. (collectively "Teva"), through its undersigned counsel, will take the deposition by oral examination of Plaintiff and Counterclaim-Defendant Takeda Pharmaceutical Company Ltd. ("Takeda") on the topics set forth in the attached Schedule A, through one or more of its officers, directors, or managing agents, or other persons designated by Takeda to testify on its behalf commencing on December 18, 2006, at 9 a.m.

Teva requests that Takeda provide written notice, at least five days in advance of the deposition of (1) the name(s) of each designee who has consented to testify on behalf of Takeda, (2) the job title of each such person(s), and (3) the topics set forth in Schedule A on which each such person(s) will testify.

The deposition will take place at the offices of Hogan & Hartson, 875 Third Avenue, New York, New York 10022, or at other such time and place as may be agreed to by counsel.

The deposition will be taken before an officer authorized by the laws of the United States to administer oaths and will be recorded by stenographic and videographic means. The deposition will continue from day to day until completed, weekends and holidays excepted, with adjournments as to time and place as may be necessary. Some or all of the deposition testimony may involve real-time computer connection between the deposition taker and court reporter using software such as "LiveNote."

November 17, 2006

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Karen L. Pascale*

Josy W. Ingersoll (No. 1088) [jingersoll@ycst.com]
John W. Shaw (No. 3362) [jshaw@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Phone: 302-571-6600

SUTHERLAND ASBILL & BRENNAN LLP
John L. North
Jeffrey J. Toney
Jeffrey D. Blake
999 Peachtree Street
Atlanta, Georgia 30309-3996
Phone: 404-853-8000

*Attorneys for Defendants and Counterclaim-Plaintiffs, Teva Pharmaceuticals USA, Inc., and Teva Pharmaceutical Industries Ltd.*

## SCHEDULE A

## DEFINITIONS

1. "Teva" means defendants and counterclaim-plaintiffs Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries, Ltd., including the companies' subsidiary companies, predecessors, successors, parents, divisions, affiliates and joint ventures to which it is or was a party, as well as any current or former officers, directors, employees, attorneys, agents, consultants, accountants, servants, partners, and representatives.

2. "Takeda" means plaintiff and counterclaim-defendant Takeda Pharmaceutical Company Ltd., including its subsidiary companies, predecessors, successors, parents, divisions, affiliates and joint ventures to which it is or was a party, as well as its current or former officers, directors, employees, attorneys, agents, consultants, accountants, servants, partners, and representatives.

3. "TAP" means plaintiff and counterclaim-defendant TAP Pharmaceutical Products Inc., including its subsidiary companies, predecessors, successors, parents, divisions, affiliates and joint ventures to which it is or was a party, as well as its current or former officers, directors, employees, attorneys, agents, consultants, accountants, servants, partners, and representatives

4. "Astra" means:

   a. AB Astra, including its parents, predecessors, successors, divisions, subsidiaries, affiliates, partnerships and joint ventures to which it is or was a party, as well as its current or former officers, directors, employees, agents, consultants and representatives; and

   b. Astra Hässle AB, including its parents, predecessors, successors, divisions, subsidiaries, affiliates, partnerships and joint ventures to which it is or was a party, as well as its current or former officers, directors, employees, agents, consultants and

representatives;

      c.    AstraZeneca Pharmaceuticals LP, including its parents, predecessors, successors, divisions, subsidiaries, affiliates, partnerships and joint ventures to which it is or was a party, as well as its current or former officers, directors, employees, agents, consultants and representatives; and

      d.    AstraZeneca AB, including its parents, predecessors, successors, divisions, subsidiaries, affiliates, partnerships and joint ventures to which it is or was a party, as well as its current or former officers, directors, employees, agents, consultants and representatives.

5. The "Patents-in-Suit" means, individually or collectively, U.S. Patent Nos. 4,628,098; 5,026,560; 5,045,321; 5,093,132; and/or 5,433,959.

6. The "Orange Book" means the Approved Drug Products with Therapeutic Equivalence Evaluations, which lists drugs approved under section 505 of the Federal Food, Drug, and Cosmetic Act.

7. The "Orange Book Patents" means, individually or collectively, U.S. Patent Nos. 4,689,333; 4,628,098; 5,026,560; 5,045,321; 5,093,132; 5,433,959; 5,013,743; and/or 6,749,864.

8. "IND" means Investigational New Drug.

9. "NDA" means New Drug Application.

10. "ANDA" means the Abbreviated New Drug Application No. 77-255.

11. "FDA" means the United States Food & Drug Administration.

12. "Foreign Counterpart Application" means any patent application filed anywhere in the world outside the United States that claims priority in whole or in part from an application that resulted in a given patent, that is the basis for a claim of priority in whole or in part

(including without limitation claims of benefits under 35 U.S.C. §§ 119(e) or 120) for a given patent, or that discloses the same subject matter as a given patent.

13. "Related Application" means any application that: (1) is a parent, child or ancestral application related in any way to a given patent; (b) is a continuation application, continuation-in-part application, divisional application, file-wrapper continuation, reexamination proceeding, reissue application, provisional application, or abandoned application of such patent or the application that led to such patent; (c) claims priority in whole or in part from such patent or the application that led to such patent; (d) is the basis for a claim of priority in whole or in part (including claims of benefit under 35 U.S.C. §§ 119(e) or 120) for a given patent; or (e) shares subject matter with a given patent.

14. "Related Patent" means any patent that issued from any Related Application.

15. "Prior Art" is used in the same sense that it is used in 35 U.S.C. § 103 and includes any patent, printed publication, prior knowledge, prior use, prior sale or offer for sale, or any other act or event defined in 35 U.S.C. § 102, taken singly or in combination.

16. "Lansoprazole" means the compound having chemical formula $C_{16}H_{14}F_3N_3O_2S$ and IUPAC name 2-[[[3-methyl-4-(2,2,2-trifluroethoxy)-2-pyridyl]methyl]sulfinyl]benzimidazole.

17. "Substituted Benzimidazole(s)" includes Lansoprazole, omeprazole, rabeprazole, pantoprazole, esomeprazole, timoprazole, picoprazole, and disuprazole and includes compounds with the structure of:

[Chemical structure: a benzimidazole ring with substituents $R^1$, $R^2$, $R^3$, $R^4$ and NH, connected through $S(=O)$–$CH_2$ to a pyridine ring with substituents $R^5$, $R^6$, $R^7$, $R^8$]

18.  wherein $R^1$, $R^2$, $R^3$, $R^4$, $R^5$, $R^6$, $R^7$, and $R^8$ independently include, but are not limited to, hydrogen, hydroxyl, alkyl (including alkoxy), alkynyl, aryl, amino acid, halo, hetercycyl, carboxylic acid, ester, ether, amino, nitro, cyano, sulfonic acid, sulfate, phosphonic acid, phosphate, phosphonate, $OCH_2CF_3$, $OCH_3$, $O(CH_2)_3OCH_3$, and $OCF_2H$, and wherein each of the $R^1$, $R^2$, $R^3$, $R^4$, $R^5$, $R^6$, $R^7$, and $R^8$ substituents themselves may be further substituted with functional group(s) listed within this definition (e.g. halogen-substituted alkyl).

19.  The term "document" shall have the broadest meaning provided by Fed. R. Civ. P. 26 and 34 and shall include all things which come within the meaning of the terms "writings and recordings" used in Fed. R. Evid. 1001. "Document" also includes tangible items such as research and development samples, prototype devices and production samples. "Documents" may be stored in either hardcopy or electronic form. Electronic documents include electronic mail, electronic mail archives, and computer code in any form. A draft, translation or non-identical copy, such as a copy containing comments or notations, is a separate document within the meaning of this term.

20.  Documents that "refer or relate to" any given matter mean documents that concern, contain, discuss, describe, analyze, embody, comment upon, identify, incorporate,

summarize, refer to, relate to, reflect, state, constitute, comprise or are otherwise pertinent to the matter or any aspect thereof.

21. The term "concerning" means referring to, relating to, describing, evidencing or constituting.

22. "Any" and "all" shall be construed individually to mean each and every.

23. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a topic any information which might otherwise be construed to be outside of its scope.

24. As used herein, the terms "identify," "identity," and "identification" when used in reference to an individual entity means to state his or her full name, residence and business telephone numbers, present residence and business addresses if known, and his or her present or last known title, position and business affiliation.

25. As used herein, "including" means "including but not limited to."

26. As used herein, the terms "policy" and "policies" shall mean policies, established procedures, rules, or business methods.

27. As used herein, the terms "practice" and "practices" shall mean customary or habitual procedures, schedules, policies, or business methods.

28. The singular and masculine form of any noun or pronoun shall embrace and be read and applied as embracing the plural, the feminine, and the neuter, except where circumstances clearly make it inappropriate.

## DEPOSITION TOPICS

1. The preparation and submission of NDA No. 20-406 for Lansoprazole, including but not limited to the application itself, any supplements thereto, and all test data or other information reviewed or considered as part of the preparation and submission of NDA No. 20-406.

2. All communications between Takeda and/or TAP and the FDA concerning Lansoprazole, NDA No. 20-406 or any amendments or supplements to NDA No. 20-406, including but not limited to all correspondence, discussions, meetings, or conferences (whether in person, by telephone, by letter, by e-mail or otherwise).

3. All clinical trials testing Lansoprazole that were conducted by Takeda and/or TAP or by anyone working at the request of Takeda and/or TAP.

4. The preparation and submission of IND No. 30,159 for Lansoprazole, including but not limited to the application itself, any supplements thereto, and all test data or other information reviewed or considered as part of the preparation and submission of IND No. 30,159.

5. All communications between Takeda and/or TAP and the FDA concerning IND No. 30,159 or any amendments or supplements to IND No. 30,159, including but not limited to all correspondence, discussions, meetings, or conferences (whether in person, by telephone, by letter, by e-mail or otherwise).

6. The date(s) and circumstances of the conception and reduction to practice of the subject matter claimed in the Patents-in-Suit and an identification of any and all evidence that corroborates the date(s) of the conception of the subject matter claimed in the Patents-in-Suit.

7.  Any and all diligence in the reduction to practice of the subject matter claimed in the Patents-in-Suit and an identification of any and all evidence that corroborates any and all diligence in the reduction to practice of the subject matter claimed in the Patents-in-Suit.

8.  The identity of each person who contributed to the alleged invention(s) claimed in the Patents-in-Suit and the specific contributions of each person to the alleged invention(s).

9.  The research, design, development, implementation, and testing (whether clinical or preclinical) of any products that embody the claims of the Patents-in-Suit or are described in NDA No. 20-406, including but not limited to Lansoprazole.

10. The manufacture of any products that embody the claims of the Patents-in-Suit or are described in NDA No. 20-406, including but not limited to Lansoprazole.

11. The ingredients (whether active or inactive) in any products that embody the claims of the Patents-in-Suit or are described in NDA No. 20-406, including but not limited to Lansoprazole.

12. Every internal name, code, nickname, and/or designation that Takeda and/or TAP has used to identify any Substituted Benzimidazole product developed, tested and/or manufactured by or for Takeda or TAP, including but not limited to the Lansoprazole product described in NDA No. 20-406 and every compound identified in U.S. Patent No. 4,628,098, and the corresponding compound described by the internal name, code, nickname, and/or designation. This topic includes but is not limited to the information provided in Takeda's and TAP's Response to Teva's Interrogatory No. 7.

13. All research and/or testing (whether clinical or preclinical) performed by or at the direction of Takeda and/or TAP that compares Lansoprazole with any other Substituted

Benzimidazole or proton pump inhibitor, including without limitation omeprazole, and all articles, reports, and/or publications related to such research and/or testing.

14. The testing protocol used in any animal testing of any drug product, compound, and/or formulation embodying any claim of the Patents-in-Suit, including but not limited to the protocol used to generate the test results cited in the '098 patent and the protocol cited in the opposition to Takeda patent EP 174,726 filed by Aktiebolaget Hassle in the European Patent Office.

15. Any decision to change the testing protocol used in any animal testing of any drug product, compound, and/or formulation embodying any claim of the Patents-in-Suit from the indomethacin-induced gastric lesion model cited in the '098 patent to the ethanol-induced gastric lesion model cited in the opposition to Takeda patent EP 174,726 filed by Aktiebolaget Hassle in the European Patent Office.

16. The mode of practicing each claim of the Patents-in-Suit that was considered to be the best mode on the date each Patent-in-Suit was filed.

17. The prosecution (including the preparation and filing) of the applications that led to each of the Patents-in-Suit, any Related Patents to the Patents-in-Suit, or any patents that issued from Foreign Counterpart Applications corresponding to the applications for the Patents-in-Suit or any Related Patents to the Patents-in-Suit.

18. The preparation and submission of any and all invention disclosure(s) during the prosecution of the applications that led to each of the Patents-in-Suit, any Related Patents to the Patents-in-Suit, or any patents that issued from Foreign Counterpart Applications corresponding to the applications for the Patents-in-Suit or any Related Patents to the Patents-in-Suit.

19. All facts and circumstances concerning the decision to apply for and the preparation and submission of the application for the patent term extension for U.S. Patent No. 4,628,098, including without limitation an identification of all persons involved, in any manner, in the application for such extension and all documents reviewed or considered as part of the application for such extension.

20. Any and all prior art identified by or invalidity arguments asserted by any third party prior to the date the United States Patent and Trademark Office granted the patent term extension for the '098 patent.

21. All attempts to sell or otherwise commercialize any product embodying any claim of the Patents-in-Suit, including but not limited to the first demonstration of such a product, the first use of such a product (including preclinical and clinical trials), the first effort or offer to sell or license such a product, the dates when Takeda or TAP began marketing, offering for sale or selling such products, and the financial results (e.g., revenues, costs, or profits), actual or projected, attributable to such products.

22. The first demonstration, first use, and first sale of any drug product, compound, and/or formulation that embodies or implements the subject matter claimed in the Patents-in-Suit, including but not limited to the date of such demonstration, use, and sale.

23. The first publication or the first making available to the public of any drug product, compound, and/or formulation that embodies or implements the subject matter claimed in the Patents-in-Suit, including but not limited to the date of such publication or making publicly available.

24. All prior art identified by Takeda and/or TAP, or working at the request of anyone associated with Takeda and/or TAP, in connection with any analysis or consideration of the claims of the Patents-in-Suit or any Related Patents or patent applications.

25. All activities related to prior art searches conducted for each of the claims of the Patents-in-Suit or any related patents or related applications, including but not limited to searches conducted during the prosecution of the Patents-in-Suit.

26. Any terms of any claims of any of the Patents-in-Suit that Takeda contends require construction by the Court, and the constructions proposed by Takeda for each such term.

27. Any and all facts that support or negate any contention(s) by Takeda that Teva has infringed. is infringing, or will infringe any claim of any of the Patents-in-Suit.

28. Any and all facts that support or negate any contention(s) by Takeda that the sale of Teva's Lansoprazole product would cause irreparable injury to Takeda, as those terms are used in *eBay, Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837 (2006).

29. Any and all facts that support or negate any contention(s) by Takeda that any remedies available at law would be inadequate to compensate Takeda for any damages caused by the sale of Teva's Lansoprazole product, as those terms are used in *eBay, Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837 (2006).

30. Any and all facts that support or negate any contention(s) by Takeda that the balance of hardships favors a permanent injunction preventing the sale of Teva's Lansoprazole product, as those terms are used in *eBay, Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837 (2006).

31. Any and all facts that support or negate any contention(s) by Takeda that the public interest would not be disserved if the Court granted a permanent injunction preventing the

sale of Teva's Lansoprazole product, as those terms are used in *eBay, Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837 (2006).

32. To the extent Takeda disagrees with Teva's responses to any Contention Interrogatories served by Takeda and/or TAP, identify the way in which Takeda disagrees with each such Response and all facts that support or negate Takeda's position.

33. All license agreements or settlement agreements relating to or concerning the Patents-in-Suit, Related Patents, patents issuing from Foreign Counterpart Applications, Lansoprazole products, or products Takeda contends to embody any claims of any of the Patents-in-Suit.

34. Takeda's ownership of and/or interest in the Patents-in-Suit, including but not limited to all assignments to and/or licenses granted by Takeda of the Patents-in-Suit.

35. All royalties and/or other payments made to or by Takeda and/or TAP in connection with the sales or licensing of any drug product, compound, and/or formulation embodying any claim of the Patents-in-Suit, including but not limited to Prevacid®.

36. Any conflict, opposition, nullity or infringement proceeding in the United States or any foreign country concerning the patents-in-suit, the filing of an ANDA for Lansoprazole, or the sale or offer for sale Lansoprazole products.

37. The litigations styled as *AB Astra v. Takeda Chemical*, Case No. 1:93-cv-04171-RPP, and *AB Astra v. Takeda Chemical*, Case No. 1:93-cv-03121-RPP, in the United States District Court for the Southern District of New York, and the settlement agreement(s) reached in those litigations.

38. All prior art identified by anyone associated with Astra in connection with any analysis or consideration of the claims of any of the Patents-in-Suit or patents that issued from Foreign Counterpart Applications of the Patents-in-Suit.

39. All royalties and/or other payments made by Takeda and/or TAP to Astra in connection with the sales or licensing or any drug product, compound, and/or formulation embodying any claim of the Patents-in-Suit.

40. The amount of annual sales of any drug product, compound, and/or formulation embodying any claim of the Patents-in-Suit from 1986 to the present.

41. The opposition to Takeda patent EP 174,726 filed by Aktiebolaget Hassle in the European Patent Office.

42. Any "secondary considerations of non-obviousness," including but limited to unexpected results or commercial success, that Takeda claims support the validity of any of the claims of the Patents-in-Suit.

43. The content and purpose of any advertising or marketing materials created by or for Takeda and/or TAP related to any drug product, compound, and/or formulation embodying any claim of the Patents-in-Suit, including but not limited to Prevacid®.

44. The budget for any advertising or marketing campaign created by or for Takeda and/or TAP related to any drug product, compound, and/or formulation embodying any claim of the Patents-in-Suit, including but not limited to Prevacid®.

45. The investigation by any department or agency of the United States government, including but not limited to any United States Attorney's office, or any state government of the practices employed by TAP and/or Takeda in marketing or selling any Takeda or TAP products, including but not limited to investigations involving the marketing or selling of Prevacid.

46. The organization of, and persons employed in, any department, division or other group within Takeda that was or is responsible for the research, development, marketing, offering for sale, or sale of TAP's or Takeda's Substituted Benzimidazole products, including Lansoprazole.

47. All document retention policies in effect at Takeda at any time between 1981 and the present.

48. Takeda's search for, assembly of, and production of documents in response to Defendant Teva Pharmaceuticals USA, Inc.'s First Set Of Requests For The Production Of Documents and Things To Plaintiff Takeda Pharmaceutical Company Ltd., including but not limited to the custodians of such documents.

49. All documents considered or reviewed in connection with the preparation and submission of Takeda's responses to any interrogatories propounded by Teva in this action.

50. The identity of all persons that assisted in, or were consulted in connection with, the preparation and submission of Takeda's responses to any interrogatories propounded by Teva in this action.

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on November 17, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Arthur G. Connolly, III [aconnollyIII@cblh.com]
> CONNOLLY BOVE LODGE & HUTZ LLP
> The Nemours Building
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE 19899-2207
> (302) 658-9141

I further certify that on November 17, 2006, I caused a copy of the foregoing document to be served by e-mail and U.S. Mail on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

> ***By E-Mail***
>
> Eric J. Lobenfeld [ejlobenfeld@hhlaw.com]
> Tedd W. Van Buskirk [twvanbuskirk@hhlaw.com]
> Arlene L. Chow [alchow@hhlaw.com]
> HOGAN & HARTSON LLP
> 875 Third Avenue
> New York, NY 10022
> (212) 918-3000
>
> Philippe Y. Riesen [pyriesen@hhlaw.com]
> HOGAN & HARTSON LLP
> Shinjuku Center Building, 46th Floor
> 25-1 Nishi-Shinjuku 1-chome
> Shinjuku, Tokyo 163-0646
> Japan
> (81) 3-5908-0470

- 2 -

William F. Cavanaugh, Jr. [wfcavanaugh@pbwt.com]
Stuart E. Pollack [sepollack@pbwt.com]
Chad J. Peterman [cjpeterman@pbwt.com]
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Karen L. Pascale*

Karen L. Pascale (No. 2903)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
kpascale@ycst.com

*Attorneys for Defendant and Counterclaim-Plaintiffs, Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries, Ltd.*