IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TAKEDA PHARMACEUTICAL COMPANY, LTD., and TAP PHARMACEUTICAL PRODUCTS INC., | ) ) ) | |
| Plaintiffs and Counterclaim-Defendants, | ) ) | C.A. No. 06-033 (SLR) |
| v. | ) ) | **REDACTED PUBLIC VERSION** |
| TEVA PHARMACEUTICALS USA, INC., and TEVA PHARMACEUTICAL INDUSTRIES LTD., | ) ) ) | |
| Defendants and Counterclaim-Plaintiffs. | ) ) ) | |

**PLAINTIFFS TAKEDA PHARMACEUTICAL
COMPANY'S AND TAP PHARMACEUTICAL PRODUCTS'
ANSWERING BRIEF ON CLAIM CONSTRUCTION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Mary B. Graham (#2256)
Rodger D. Smith II (#3778)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19801
302.658.9200

OF COUNSEL:

Eric J. Lobenfeld
Tedd W. Van Buskirk
Arlene L. Chow
Dillon Kim
HOGAN & HARTSON LLP
875 Third Avenue
New York, New York 10022
212.918.3000

Philippe Y. Riesen
HOGAN & HARTSON LLP
Shinjuku Center Building, 46th Floor
25-1 Nishi-Shinjuku 1-chome
Shinjuku, Tokyo 163-0646
Japan
(81) 3-5908-4070

*Attorneys for Takeda Pharmaceutical
Company Ltd., and TAP
Pharmaceutical Products Inc.*

Richard de Bodo
HOGAN & HARTSON LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
310.785.4600

*Attorneys for Takeda*
*Pharmaceutical Company Limited*

William F. Cavanaugh
Stuart E. Pollack
Chad J. Peterman
PATTERSON BELKNAP WEBB & TYLER
LLP
1133 Avenue of the Americas
New York, New York 10036
212.336.2000

*Attorneys for TAP*
*Pharmaceutical Products Inc.*

Original Filing Date:  September 24, 2007
Redacted Filing Date: October 1, 2007

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION .............................................................................................. 1

THE CLAIM TERMS IN DISPUTE .................................................................. 3

    A.    "The benzimidazole compound being in contact with the basic inorganic salt evenly" ............................................................. 3

        1.    The intrinsic record supports Plaintiffs' construction. ................................................................................ 3

        2.    The specification does not limit "in contact with the basic inorganic salt evenly" to homogeneous mixtures. ....................................................................................... 4

            a.    The specification discloses multiple ways to achieve "contact with the basic inorganic salt evenly". ..................................................................... 4

            b.    Teva's description of the opinions of Plaintiffs' expert and the state of the art is misleading ...................................................................... 6

        3.    The prosecution history does not limit "in contact with the basic inorganic salt evenly" to homogeneous mixtures .............................................................. 8

    B.    "Pharmaceutical composition" .............................................. 10

    C.    "Coated by a coating agent" ................................................... 12

    D.    "The amount of magnesium carbonate relative to parts by weight of the benzimidazole compound    [lansoprazole] being about 0.3-20 parts by weight" ................................... 13

    E.    Granules ................................................................................. 14

    F.    "Basic Inorganic Salt" ........................................................... 15

CONCLUSION ................................................................................................. 15

## TABLE OF AUTHORITIES

Case(s)                                                                                    Page(s)

*Abbott Labs. v. Sandoz, Inc.,*
   __F. Supp. 2d__, 2007 WL 1141635 (N.D. Ill. Apr. 16, 2007)...............................................10

*Abbott Labs v. Teva Pharms. USA, Inc.,*
   2005 WL 1026746 (D. Del. Apr. 22, 2005).......................................................................10

*Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.,*
   340 F.3d 1298 (Fed. Cir. 2003)...........................................................................................6

*Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.,*
   257 F.3d 1364 (Fed. Cir. 2001)...........................................................................................6

*Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.,*
   34 F.3d 1048 (Fed. Cir. 1994).............................................................................................2

*Gart v. Logitech, Inc.,*
   254 F.3d 1334 (Fed. Cir. 2001)...........................................................................................2

*Gillette Co. v. Energizer Holdings, Inc.,*
   405 F.3d 1367 (Fed. Cir. 2005).........................................................................................11

*Goldenberg v. Cytogen, Inc.,*
   373 F.3d 1158 (Fed. Cir. 2004).........................................................................................11

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,*
   381 F.3d 1111 (Fed. Cir. 2004)...........................................................................................2

*Invitrogen Corp. v. Biocrest Mfg., L.P.,*
   327 F.3d 1364 (Fed. Cir. 2003)...........................................................................................8

*Kinik, Co. v. Int'l Trade Comm'n,*
   362 F.3d 1359 (Fed. Cir. 2004)...........................................................................................2

*Laitram Corp. v. Cambridge Wire Cloth Co.,*
   863 F.2d 855 (Fed. Cir. 1988).............................................................................................2

*Laitram Corp. v. NEC Corp.,*
   163 F.3d 1342 (Fed. Cir. 1998)...........................................................................................2

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
   358 F.3d 898 (Fed. Cir. 2004)...........................................................................................11

*Markman v. Westview Instruments, Inc.,*
   52 F.3d 967 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996).........................................8

*MIT v. Abacus Software*,
    462 F.3d 1344 (Fed. Cir. 2006)......................................................................................8

*Specialty Composites v. Cabot Corp.*,
    845 F.2d 981 (Fed. Cir. 1988)......................................................................................2

*SuperGuide Corp. v. DirecTV Enters., Inc.*,
    358 F.3d 870 (Fed. Cir. 2004)......................................................................................2

*Teleflex , Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002)................................................................................8, 11

*Trovan, Ltd. v. Sokymat SA, Irori*,
    299 F.3d 1292 (Fed. Cir. 2002)......................................................................................2

*Vanguard Prods. Corp. v. Parker Hannifin Corp.*,
    234 F.3d 1370 (Fed. Cir. 2000)......................................................................................3

*Vivid Techs. v. Am. Sci. & Eng'g, Inc.*
    200 F.3d 795 (Fed Cir. 1999)......................................................................................11

## <u>INTRODUCTION</u>

Plaintiffs respectfully submit this reply brief in support of their proposed construction of certain claim terms of the '321 Patent.  As set forth in Plaintiffs Takeda Pharmaceutical Company's and TAP Pharmaceutical Products' Opening Claim Construction Memorandum (D.I. No. 133, "Pls. Opening Mem."), Plaintiffs propose claim constructions consistent with the ordinary meaning of the disputed terms and the intrinsic record.

Teva's brief recognizes the principle that the ordinary and customary meanings should apply here.  Defendants Teva Pharmaceuticals USA, Inc.'s and Teva Pharmaceutical Industries Ltd.'s Opening Claim Construction Brief (D.I. No. 131,  "Teva's Opening Br.") at 1. Yet in the specific constructions Teva proposes, Teva attempts to use statements in the prosecution history and specification to limit the plain meaning of the disputed claim terms. Thus, Teva's claim-construction contentions are inconsistent with the rules of claim construction that Teva articulates.

Teva's proposed constructions read descriptions of embodiments into the claims. For example, regarding the claim term "the benzimidazole compound being in contact with the basic inorganic salt evenly," Teva requires that the benzimidazole (lansoprazole) and salt (magnesium carbonate) be "mixed homogeneously together."  But the words "homogeneously" and "mixed" appear nowhere in the claim language, and none of the patent's examples explicitly recite or require homogeneous mixing.

Similarly, in connection with "pharmaceutical composition," Teva's tortured proposed construction restricts the ingredients that can be present in the pharmaceutical composition (i.e., pharmaceutical composition "does not include any excipients used for

coating"). This stands in stark contrast to Plaintiffs' ordinary meaning proposal of "a medicinal drug product in a state suitable for administration to a patient."

Teva's proposed constructions violate at least three separate canons of claim construction, and must be rejected.

First, Teva improperly reads limitations from the specification into the claims. "[C]laims are not to be interpreted by adding limitations appearing only in the specification." *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).[1] "The claims of the patent, not its specifications, measure the invention." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004), quoting *Smith v. Snow*, 294 U.S. 1, 11 (1935).

Second, Teva proposes to limit the claims to embodiments described in the specification. That is improper. A patent's claims are "not restricted to the specific examples or the preferred embodiments" described in the specification. *Kinik, Co. v. Int'l Trade Comm'n*, 362 F.3d 1359, 1364 (Fed. Cir. 2004). "References to a preferred embodiment, such as those often present in a specification, are not claim limitations." *Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855, 865 (Fed. Cir. 1988).

---

[1]    *See also SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004) ("[I]t is important not to import into a claim limitations that are not a part of the claim); *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1306 (Fed. Cir. 2002) (rejecting a claim construction that "would amount to improperly importing a limitation from the specification into the claims"); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1343 (Fed. Cir. 2001) (a claim construction may not "improperly add a limitation appearing in the specification and the drawings, but not appearing in the unambiguous language of the claim"); *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998) ("[A] court may not import limitations from the written description into the claims"); *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 987 (Fed. Cir. 1988) ("Where a specification does not require a limitation, that limitation should not be read from the specification into the claims.").

Third, Teva proposes to read method-of-manufacture requirements into claims that do not include method steps. The Federal Circuit has rejected such an approach. Claims covering a product are "not limited to the process by which it was made." *Vanguard Prods. Corp. v. Parker Hannifin Corp.*, 234 F.3d 1370, 1372 (Fed. Cir. 2000).

Teva's claim constructions have no basis in the law. As a result, Plaintiffs respectfully request that this Court adopt the claim constructions that Plaintiffs have proposed.

## THE CLAIM TERMS IN DISPUTE

A.    **"The benzimidazole compound being in contact with the basic inorganic salt evenly"**

*Plaintiffs' Construction: The phrase "the benzimidazole compound being in contact with the basic inorganic salt evenly" means a mixture of the benzimidazole compound in contact with the basic (i.e., alkaline) inorganic salt in a uniformly basic environment*

Because Teva believes that the term "the benzimidazole compound being in contact with the basic inorganic salt evenly" is "a key issue in this action," Plaintiffs will address it first. Teva's Opening Br. at 1. Since Teva seeks a finding of noninfringement based on each disputed claim term, it is unclear why Teva has selected this term for special treatment.

### 1.    **The intrinsic record supports Plaintiffs' construction.**

As Plaintiffs demonstrated in Pls. Opening Mem. at 14-18, "the benzimidazole compound being in contact with the basic inorganic salt evenly" refers to a mixture of lansoprazole and magnesium carbonate sufficient to create a uniform (even) basic environment. This meaning is supported throughout the specification and prosecution history, which disclose contact through proximity between lansoprazole and magnesium carbonate particles, which in turn create a uniform basic environment and achieve the goal of the '321 Patent – to stabilize lansoprazole. *Id.*

**2.    The specification does not limit "in contact with the basic inorganic salt evenly" to homogeneous mixtures**

   **a.    The specification discloses multiple ways to achieve "contact with the basic inorganic salt evenly"**

Teva argues that "the benzimidazole compound being in contact with the basic inorganic salt evenly" requires that "the benzimidazole compound and the inorganic salt are mixed homogeneously together."  Teva Opening Br. at 8-12.  Teva is wrong.

First, none of the twelve words in the term contain or refer to the words "mixed" or "homogeneously."  In contrast, Plaintiffs' construction sticks with the words themselves, and their dictionary definitions, and is further supported by the underlying science.  Closer examination of the specification and prosecution history shows that Teva is only telling part of the story by reading these documents too narrowly and out of context.

Mixing is one (and only one) of the processes the patent discloses to achieve "contact with the basic inorganic salt evenly."  In fact, in one of the key paragraphs that Teva relies upon to support its construction, Teva Opening Br. at 10, the patent shows that mixing is only one alternative means of producing the claimed formulation:

> *The method of admixing is **optional** if the benzimidazole compound can finally be in contact with the basic inorganic salt of magnesium and/or of calcium evenly.  Thus, for example, the additives may be admixed with a mixture of the benzimidazole compound and the basic inorganic salt of magnesium and/or calcium as prepared by preliminary admixing, or the basic inorganic salt of **magnesium** and/or of calcium **may be added to** a mixture of **the benzimidazole compound** and the additives as prepared by preliminary admixing.*

'321 Patent, col. 9, ll. 56-65 (emphasis added).

Thus, the magnesium salt (magnesium carbonate) need only be "added" to "the benzimidazole [lansoprazole] compound."  Lansoprazole and magnesium carbonate need not be mixed, which is described as another alternative: "[1] admixed with a mixture of the

benzimidazole compound and … magnesium … as prepared by preliminary admixing, *or* [2] the basic inorganic salt of **magnesium** … **may be added to** a mixture of **the benzimidazole compound**."

There is no reference to "homogeneous" in any of the 11 enumerated examples in the specification. *See* '321 Patent, col. 12, l. 56 – col. 16, l. 4. In fact, each example describes other types of mixing to achieve "contact with the basic inorganic salt evenly." For example:

EXAMPLE 1

*Of the components given below, the compound (A), magnesium hydroxide, L-cysteine, corn starch and lactose* **were mixed together,** *then microcrystalline cellulose, light silicic anhydride and magnesium stearate, each in half the intended amount, were added.* **After sufficient admixing,** *the mixture was compression-molded on a dry granulator. . .*

\* \* \*

EXAMPLE 3

*Of the components given below, the compound (B), precipitated calcium carbonate, corn starch, lactose and hydroxypropylcellulose* **were mixed together,** *water was added, and* **the mixture was kneaded,** *then dried in vacuum at 40°C. for 16 hours, ground in a mortar and passed through a 16-mesh sieve to give granules. To this was added magnesium stearate and the resultant mixture was made up into tablets each weighing 200 mg on a rotary tableting machine (Kikusui Seisakusho, Japan).*

\* \* \*

'321 Patent, col. 12, l. 57 – col. 13, l. 63 (emphasis added). Examples 5 and 8 that Teva quotes, Teva Opening Br. at 10, provide yet other descriptions of how "contact with the basic inorganic salt" was achieved.

The examples describe mixing in a wide variety of ways, but none require "homogeneous mixing." The patentees could have used the express word "homogeneous," but they did not. Instead they used "mixed together," "kneaded," or other descriptions for mixing.

The patentee's "varied use" of terms for mixing "attests to the breadth of a term rather than providing a limited definition." *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1308 (Fed. Cir. 2003).

Additional evidence that "contact with the basic inorganic salt evenly" is not limited to homogeneous admixing comes from the fact that "homogeneous" only appears in the specification twice, while derivatives of the words "mix" and "admix" appear over 30 times. The patentees knew how to use the word "homogeneous," but chose not to use it in the overwhelming majority of instances where mixing was described in the specification. If the invention had been limited to homogeneous mixtures, the patentees would have stated so. If that had been the case, there would have been no need for the patentees to use the phrase "contact with the basic inorganic salt evenly" in the claim; instead using the word "homogeneous" would have sufficed. The fact that the patent uses two different phrases in its description is consistent with there being "different meanings of these phrases." *Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.*, 257 F.3d 1364, 1377 (Fed. Cir. 2001).

### b.    Teva's description of the opinions of Plaintiffs' expert and the state of the art is misleading

Teva's selective quotation of Plaintiffs' expert Dr. Stephen Byrn on page 10 of Teva's Opening Br. is misleading. Teva claims that "Dr. Stephen Byrn admits that the '321 patent describes a 'homogenous admixture of a benzimidazole compound and a basic inorganic salt.'" Teva Opening Br. at 10. What Dr. Byrn actually states is quite different. Consistent with the discussion above, Dr. Byrn wrote that a homogeneous admixture is _**one**_ of the descriptions in the specification, but that there were numerous other types of mixing that can result in "the benzimidazole compound being in contact with the basic inorganic salt evenly."

The full and correct context of Dr. Byrn's statements follows:

B.  In the specification, **_one_** description of "contact ... evenly" is a homogenous admixture of a benzimidazole compound and basic inorganic salt.  Col. 9, ln. 45-49.

C.  **_But the specification is clear however, that "contact ... evenly" is not limited to a homogenous admixture._**  Col. 9, ln. 56-59 ("The method of admixing is **optional** if the benzimidazole compound can finally be in contact with the basic inorganic salt of magnesium and/or of calcium evenly.") (emphasis added).

D.  **_The specification identifies numerous other types of mixing that can result in "contact ... evenly."_**  The specification provides several additional examples of processes resulting in "contact ... evenly": "the additives may be admixed with a mixture of the benzimidazole compound and the basic inorganic salt of magnesium and/or calcium as prepared by preliminary admixing, **_or_** the basic inorganic salt of magnesium and/or of calcium may be added to a mixture of the benzimidazole compound and the additives as prepared by preliminary admixing."  Col. 9, ln. 60-66 (emphasis added).

Teva's Exhibits, "Expert Report of Dr. Stephen R. Byrn, Ph.D.," Ex. 14, ¶ 72B-D (D.I. 132). (emphasis added); *see also* Declaration of Stephen R. Byrn, Ph.D. at ¶ 50 (D.I. 134).

When Dr. Byrn's statements are considered in their entirety, they are completely consistent with Plaintiffs' position concerning the proper construction of "the benzimidazole compound being in contact with the basic inorganic salt evenly," and they help establish that the specification did not limit the invention to homogeneous admixing.

Teva also errs to the extent it suggests that this Court should consider the Jantzen and Robinson article in connection with claim construction.  *See* Teva's Opening Br. at 9 (citing Teva's Appendix, Ex. 9, a 1996 article by Jantzen and Robinson for the proposition that "others of skill in the art have used the term homogeneously when discussing the relative location of ingredients in a pharmaceutical product.").  First, it is axiomatic that claim terms are to be

interpreted as of the effective filing date of the patent.  *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 986 (Fed. Cir. 1995) (en banc) ("[T]he focus is on the objective test of what one of ordinary skill in the art at the time of the invention would have understood the term to mean."), *aff'd*, 517 U.S. 370 (1996); *MIT v. Abacus Software*, 462 F.3d 1344, 1351 (Fed. Cir. 2006) (relying on "[d]ictionary definitions…at the time the patent application was filed"). Teva's reliance on an article published *10 years after* the effective filing date of the '321 Patent is wholly improper.  Second, the article relied upon by Teva deals with "matrix devices," which are not relevant to the '321 Patent.  Neither Prevacid nor Teva's product are matrix devices. Therefore, even if this article had been written 10 years earlier, it would establish nothing about the terms used in the '321 Patent.

>   **3.    The prosecution history does not limit "in contact with the basic inorganic salt evenly" to homogeneous mixtures**

In addition to its misplaced arguments about the patent specification, Teva argues that the prosecution history limits the phrase "in contact with the basic inorganic salt evenly" to formulations where "the benzimidazole compound and the inorganic salt are mixed homogeneously together."  Teva is wrong.

The Federal Circuit has stated that, to have a narrowing effect, prosecution history statements must use "words or expressions of manifest exclusion or restriction during the administrative proceedings before the Patent and Trademark Office."  *Teleflex , Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1326 (Fed. Cir. 2002).  In the case of the '321 Patent, there is no "clear and unambiguous" disclaimer of scope in the prosecution history, as would be necessary to narrow the term to homogeneous mixtures.  *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1367 (Fed. Cir. 2003).

The phrase "the benzimidazole compound being in contact with the basic inorganic salt evenly" was added to the claims during the prosecution of the '321 Patent. In making the amendment, the patentees described homogeneous mixing as *an* example, but never described homogeneous mixing as a requirement. In fact, the only "requirement disclosed" in the prosecution history is that the lansoprazole and magnesium salt must be "contacted evenly," leading to a stabilized formulation. *See* Teva's Appendix of Exhibits (D.I. 132, "Teva's Exhibits"), Ex. 12, Takeda-739755 (Appeal dated 12/29/89) ("The present independent composition and method claims require that the benzimidazole derivatives be contacted evenly with a basic inorganic salt of magnesium or calcium. This serves to stabilize the benzimidazole derivatives . . . .") (emphasis in original).

The prosecution history itself describes the phrase "in contact with the basic inorganic salt evenly" in a functional manner – *i.e.*, as mixing so there is sufficient contact to stabilize the lansoprazole. *See* Teva's Exhibits, Ex. 10, Takeda-739675 (Amendment dated 11/28/88) ("[E]ven contact between the benzimidazole compound and the included organic salt [] leads to a stabilization not shown to be expected in the prior art."); *id.* at Takeda-739757 ("Inadequate mixing, resulting in uneven contact, yielded unstable products."). Surprisingly, Teva relies on this same language as its principal support for its contention that the claim requires homogeneously mixed compositions. Teva Opening Br. at 11. But the words "homogeneously mixed" appear nowhere in the text Teva quotes in its brief. Although "homogeneously mixed" is an example of mixing that results in stable products and satisfies the claim term, other types of mixing processes can result in stable products, as long as "the benzimidazole is in contact with the basic inorganic salt evenly." The patentees did not disclaim any processes during prosecution or limit the invention to homogeneous mixing.

- 9 -

For all the reasons set forth above and in Plaintiffs Opening Memorandum, Plaintiffs' construction of "the benzimidazole compound being in contact with the basic inorganic salt evenly" should be adopted.    Teva's method-limited construction should be rejected.

B.    **"Pharmaceutical composition"**

*Plaintiffs' Construction: The phrase "pharmaceutical composition" means a medicinal drug product in a state suitable for administration to a patient*

"Pharmaceutical composition" is a well understood term with a simple ordinary meaning.    *See* Pls. Opening Mem. at 4-10.    Plaintiffs have provided numerous dictionary definitions that support their construction, and have pointed to the large number of patent claims in the art that use this commonplace term.    *Id.*    The term was recently construed by a court in a manner consistent with Plaintiffs' proposed construction.    *See Abbott Labs. v. Sandoz, Inc.*, __F. Supp. 2d__, 2007 WL 1141635, at *17 (N.D. Ill. Apr. 16, 2007) ("The term 'pharmaceutical composition' means an aggregated product formed from two or more substances for use as a drug in medical treatment.").

Yet Teva offers a tortured construction that strays far afield from the ordinary meaning.    It does so even though it and its experts argued for a similarly tortured construction (which was rejected in favor of the ordinary meaning) in another case.    *See* Pls. Opening Mem. at 9 (describing Teva's argument in *Abbott Labs v. Teva Pharms. USA, Inc.*, 2005 WL 1026746, at *9-10 (D. Del. Apr. 22, 2005)).    And Teva does so even though in its own patent application for the precise generic formulation at issue in this case, Teva refers to the entirety of its formulation as a "pharmaceutical composition."    *See* U.S. Publication No. 2005/0214372 (Ex. 1), claim 1:

1.  A process of preparing a stable *pharmaceutical composition* of an acid labile drug …

- 10 -

Contrary to Teva's proposed construction, there is a "heavy presumption" that claim terms should receive their ordinary meaning. *Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1163 (Fed. Cir. 2004). "The claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004); *see also Teleflex*, 299 F.3d at 1324. There is nothing in the specification or prosecution history of the '321 Patent that demonstrated an intent to limit the scope of the meaning of "pharmaceutical composition" to some special construction created by the patentees.

Moreover, "pharmaceutical composition" is used in a very general manner in the '321 Patent's claims. First, "pharmaceutical composition" is a preamble to claim 2 and is used to describe the overall invention, which includes lansoprazole, magnesium carbonate, tablets or granules, coating agents plus the rest of the requirements enumerated in the claim. Second, it is followed by the open-ended term "comprises" ("A pharmaceutical composition, . . . , which ***comprises*** . . ."), which means, that the pharmaceutical composition may include any number of elements or structures in addition to the limitations enumerated in the claim. *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1371 (Fed. Cir. 2005); *see also Vivid Techs. v. Am. Sci. & Eng'g, Inc.* 200 F.3d 795, 811 (Fed Cir. 1999) (citations omitted). By using the term "comprises" in the claim language and the specification, claim 2 encompasses any pharmaceutical composition, regardless of content or structure, that otherwise meets the limitations of the claim.

Not only does Teva's construction disregard the ordinary meaning, it completely ignores the term "comprises" by proposing a construction that specifically excludes any

"excipients used for coating the pharmaceutical composition." This exclusion is contrary to the rules concerning the proper construction of the term "comprises" in claims.

Teva's argument that the addition of the words "coated by a coating agent" to the claim means that the "pharmaceutical composition" cannot include a coating agent is baseless. The coating agent was added to restrict the "pharmaceutical composition" further by requiring that it be a pharmaceutical composition that was coated. Teva cannot reasonably read this amendment as requiring that the pharmaceutical composition be uncoated.

For the reasons set forth above and in Plaintiffs Opening Memorandum, Plaintiffs' construction of "pharmaceutical composition" should be accepted. Teva's method-limited construction should be rejected.

### C.     **"Coated by a coating agent"**

> *Plaintiffs' Construction: The phrase "coated by a coating agent" refers to covering a tablet or granule with a pharmaceutically acceptable coating*

Plaintiffs' construction is consistent with the ordinary meaning of "coated by a coating agent." *See* Pls. Mem. at 10-11. Contrary to Teva's contention, Plaintiffs do not read out the "coated by a coating agent" term. Claim 2 covers only coated pharmaceutical compositions. But there is no dispute that Teva's product is enteric-coated.

Teva argues that the coating agent must be maintained separate from the pharmaceutical composition, but Teva provides no basis to support this. As recited in the claim, the "pharmaceutical composition" is one which is coated by a coating agent, as explained in Plaintiffs' Opening Memorandum at 7-10.

Teva's construction is additionally flawed to the extent it requires the coating agent to have specific properties (*e.g.*, masking taste, etc.). There is nothing in the '321 Patent

specification or prosecution history that requires any of these properties to be incorporated into the construction.

**D.    "The amount of magnesium carbonate relative to parts by weight of the benzimidazole compound [lansoprazole] being about 0.3-20 parts by weight"**

> *Plaintiffs' Construction: The phrase "the amount of magnesium carbonate relative to parts by weight of the benzimidazole compound [lansoprazole] being about 0.3-20 parts by weight" means that the ratio of magnesium carbonate to lansoprazole by weight in the pharmaceutical composition is between 0.3 and 20*

Plaintiffs propose a construction consistent with the ordinary meaning of "the amount of magnesium carbonate relative to parts by weight of the benzimidazole compound [lansoprazole] being about 0.3-20 parts by weight." *See* Pls. Opening Mem. at 13-14.

This claim term directs one of skill in the art to make a simple calculation and divide the weight of the basic inorganic salt in the pharmaceutical formulation by the weight of the benzimidazole compound in the pharmaceutical formulation. If the result is between 0.3 and 20, this claim element is satisfied.

Teva's construction improperly injects the words "that is in even contact" into this phrase although these words do not appear there. Teva's construction is wrong as a matter of grammar. The requirement that the "the benzimidazole compound being in contact with the basic inorganic salt evenly" appears at the end of the claim, separated by a semi-colon from the limitation dealing with the ratio of magnesium carbonate and lansoprazole in the pharmaceutical composition. The use of the semi-colon to separate the two claim limitations means that these are separate and distinct limitations.

In addition, the '321 Patent specification supports Plaintiffs' ordinary meaning interpretation. All of the examples list the total amount of benzimidazole compound and basic

inorganic salt in the illustrative formulations.  From these numbers, a ratio can be calculated. The examples do not list or otherwise calculate the amounts of benzimidazole compound and basic inorganic salt that are "in contact with [each other] evenly," which would be the relevant amounts to set forth if Teva's proposed construction were correct.

      **E.**      <u>**Granules**</u>

> ***Plaintiffs' Construction: The term "granules" refers to small pellets that are typically combined with other granules into a tablet or capsule***

Plaintiffs explained why "granules" should be given its ordinary and customary meaning in Plaintiffs' Opening Memorandum.  Pls. Opening Mem. at 11-12.  Moreover, Plaintiffs provided numerous dictionaries and other support for their construction.  *Id.*

Teva did not respond.  Instead, Teva now contends that "interpretation of this term does not affect any of the infringement or validity issues involved in this action." Teva's Opening Br. at 17.  But in Teva's expert's report, Teva contended that its interpretation of "granules" provides support for its noninfringement defense.  Teva's Exhibits, D.I. 132 at Ex. 8, "Expert Report of Walter Chambliss, Ph.D." at 12-15.  In this expert report, Teva and its expert Dr. Chambliss gave detailed reasons why they believed they could avoid infringement based on their proposed interpretation of "granules."

Unless Teva withdraws this portion of Dr. Chambliss' report, the term "granules" must be construed.  Teva should not be permitted to avoid an unfavorable claim construction ruling on "granules," yet submit testimony at trial that its understanding of the ordinary meaning of "granules" supports its noninfringement defense.

Since Teva offers no arguments to rebut Plaintiffs' claim construction of "granules," the Court should adopt Plaintiffs' construction.

F.     **"Basic Inorganic Salt"**

Plaintiffs agree with Teva that it is unnecessary to construe basic inorganic salt.

*See* Teva Opening Br. at 18.  There is no dispute that Teva's product uses magnesium carbonate,

which is specifically identified as the basic inorganic salt in claim 2 of the '321 Patent.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' Opening Memorandum,

Plaintiffs respectfully request that the Court adopt Plaintiffs' claim constructions.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ James W. Parrett, Jr. (#4292)*
Jack B. Blumenfeld (#1014)
Mary B. Graham (#2256)
Rodger D. Smith II (#3778)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19801
302.658.9200

*Attorneys for Takeda Pharmaceutical
Company Ltd., and TAP
Pharmaceutical Products Inc.*

OF COUNSEL:

Eric J. Lobenfeld
Tedd W. Van Buskirk
Arlene L. Chow
Dillon Kim
HOGAN & HARTSON LLP
875 Third Avenue
New York, New York 10022
212.918.3000

Philippe Y. Riesen
HOGAN & HARTSON LLP
Shinjuku Center Building, 46th Floor
25-1 Nishi-Shinjuku 1-chome
Shinjuku, Tokyo 163-0646
Japan
(81) 3-5908-4070

Richard de Bodo
HOGAN & HARTSON LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
310.785.4600

*Attorneys for Takeda*
*Pharmaceutical Company Limited*


William F. Cavanaugh
Stuart E. Pollack
Chad J. Peterman
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
212.336.2000

*Attorneys for TAP*
*Pharmaceutical Products Inc.*

September 24, 2007
1251083

- 16 -

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2007, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

Karen L. Pascale, Esquire
Karen E. Keller, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on October 1, 2007 upon the following individuals in the manner indicated:

**BY E-MAIL AND HAND DELIVERY**       **BY E-MAIL**

Karen L. Pascale, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

**kpascale@ycst.com**

John L. North, Esquire
SUTHERLAND ASBILL & BRENNAN LLP
**john.north@sablaw.com**

Jeffrey J. Toney, Esquire
SUTHERLAND ASBILL & BRENNAN LLP
**jeffrey.toney@sablaw.com**

Laura Fahey Fritts, Esquire
SUTHERLAND ASBILL & BRENNAN LLP
**laura.fritts@sablaw.com**

Jeffrey D. Blake
SUTHERLAND ASBILL & BRENNAN LLP
**jeffrey.blake@sablaw.com**

*/s/ James W. Parrett, Jr. (#4292)*
_____
James W. Parrett, Jr. (#4292)

861046